UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                      )
       v.             )    Cr. No. 07-10339-MLW
                      )
NYGELL JONES,          )
    Defendant.       )

MEMORANDUM AND ORDER

WOLF, D.J.                         March 14, 2014

I.  OVERVIEW

Defendant Nygell Jones was tried by jury and convicted on one count of possession of a firearm and ammunition by a convicted felon. On September 16, 2008, he was sentenced to 27 months in prison. On May 7, 2010, Jones filed a motion under 28 U.S.C. §2255 to vacate, set aside, or correct his sentence (the "Motion"). The Motion alleges that the firearm Jones was convicted of possessing was planted on him by the police; that the prosecution withheld exculpatory evidence from Jones; and that Jones was denied the effective assistance of trial counsel.

As explained in this Memorandum, the Motion is barred by the one-year period of limitation imposed by 18 U.S.C. 2255(f). Moreover, none of Jones's claims would support relief even if the Motion had been filed within the period of limitation. The Motion is, therefore, being denied.

II.  BACKGROUND

On October 17, 2007, Jones was indicted on one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1). He pleaded not guilty. Represented by Robert Ullmann, Esq., Jones was tried by jury in June 2008.

The core of the prosecution's evidence was provided by the four police officers who had arrested Jones: Sergeant James Tarantino and Officer Rance Cooley of the Boston Police Department, and Massachusetts State Troopers William Cameron and Stephen Johnson. Tarantino, Cooley, Cameron, and Johnson were members of the Boston Police Department's Youth Violence Strike Force. They testified, consistent with each other, as follows.

At about 11:45 p.m. on August 3, 2007, Tarantino, Cooley, Cameron, and Johnson approached a building located at 22-24 Thane Street in Dorchester, Boston, where a large party was being held. When Jones saw the officers approaching, he grabbed the waist of his shorts and began moving aggressively through the crowd of party-goers and into the building. Tarantino, Cameron, and Johnson followed Jones into the building. Cooley remained outside.

Inside the building, the officers saw Jones clutching his waistband frantically. Surmising that Jones had a gun, the

officers pursued him. Tarantino overtook Jones and tackled him. Cameron and Johnson handcuffed Jones. Tarantino removed a gun loaded with a magazine and ten rounds of ammunition from Jones's waistband.

The officers walked Jones outside the building. Cameron led Jones to a police cruiser and instructed him to lean against the cruiser. Jones broke free and started running. Cameron chased Jones, caught up to him, and tackled him. Jones struck his head on a retaining wall. Both Jones and Cameron fell and hit the sidewalk. The officers called for Emergency Medical Services. Jones was given preliminary treatment and taken by ambulance to Boston Medical Center.

Rachel Lemery, a criminalist for the Boston Police Department latent fingerprint unit, also testified. According to Lemery, no fingerprints were identified on the gun or on the rounds of ammunition found on Jones. One partial fingerprint was found on the magazine. A comparison of that print with Jones's fingerprints was inconclusive.

Jones stipulated that he had previously been convicted of a felony. His defense was, in essence, that the police officers were lying -- that they had not, in fact, found the gun and the ammunition on him. Jones challenged the officers' credibility in various ways. Among other things, he pointed out that Cameron and Johnson had filed practically identical police reports

3

concerning the night of Jones's arrest, but that each testified at trial that he had not copied the other's report.

Two witnesses were presented by the defense, Monique Cooper and Barbara Santos-Silva. Cooper and Santos-Silva testified that they saw Jones being beaten and kicked by the police while he was handcuffed. Jones also introduced medical records from the night of his arrest. These records showed that Jones was unconscious on arrival at the hospital. He was found to have sustained a head laceration, a collapsed lobe in his right lung, and a deviated septum.

In rebuttal, the government offered the testimony of two additional Boston Police Department officers, Sergeant John Earley and Officer Adrian Worrell. Earley and Worrell testified that they had arrived on the scene after Jones's arrest and did not witness any violence by the arresting officers.

On June 24, 2008, the jury returned a guilty verdict. Jones moved for a judgment of acquittal or for a new trial. The court denied the motion. On September 16, 2008, the court sentenced Jones to 27 months in prison followed by 36 months of supervised release. Judgment was entered on October 5, 2008. Jones did not appeal his conviction or his sentence.

On May 7, 2010, Jones filed the instant §2255 Motion. Attached to the Motion was a letter requesting that the court "'toll' the appropriate number of days, in order to validly be

4

able to determine said motion/petition under 28 U.S.C. §2255 as having been timely filed." Letter from Jones filed May 7, 2010, at 1 ("Extension Letter"). The court permitted the Motion to be docketed, but stated that the decision to do so was "without prejudice to any argument by the government that the claims in the §2255 motion are barred by the applicable limitations period." July 12, 2010 Order ¶1. The government moved for dismissal of the Motion without a hearing, both on period of limitation grounds and on the merits.[1]

## III. THE MOTION IS TIME-BARRED

### A.  Legal Standard

Motions under 28 U.S.C. §2255 are subject to "[a] 1-year period of limitation." 28 U.S.C. §2255(f). This period of limitation begins on the latest of several alternative dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

[1]    After Jones was released from prison, on September 26, 2012, Probation reported that Jones had violated several conditions of his supervised release. Probation and Jones jointly requested that the conditions of release be modified to include partial home detention. Before that request was acted on, on November 2, 2012, Probation reported that Jones had been arrested on state charges. A federal warrant was issued for his arrest. Jones is currently in state custody.

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. If a defendant does not appeal his conviction, "judgment of conviction becomes final" at the end of the period for filing an appeal. See Barreto-Barreto v. United States, 551 F.3d 95, 99 (1st Cir. 2008); Trenkler v. United States, 268 F.3d 16, 20 (1st Cir. 2001).

The period of limitation for §2255 proceedings is not jurisdictional. See Ramos-Martinez v. United States, 638 F.3d 315, 321 (1st Cir. 2011). It is subject, in appropriate cases, to equitable tolling. See Id. at 321-22 (citing and extending Holland v. Florida, 130 S. Ct. 2549 (2010)). However, equitable tolling is "the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances." Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001).

"A habeas petitioner bears the burden of establishing the basis for equitable tolling." Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010). To carry this burden, the petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and

prevented timely filing." <u>Holland</u>, 130 S. Ct. at 2562 (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)); <u>see also</u> <u>Trapp v. Spencer</u>, 479 F.3d 53, 61 (1st Cir. 2007).

B.   <u>Analysis</u>

As explained below, the Motion was filed after the period of limitation prescribed by §2255(f) had elapsed, and that period of limitation should not be equitably tolled.

1.   *§2255(f)*

Judgment against Jones was entered on October 5, 2008. According to the Federal Rules of Appellate Procedure then in effect, any appeal was required to be filed within ten days.[2] Because Jones did not file an appeal, judgment became final on October 15, 2008. Therefore, the baseline period of limitation prescribed by §2255(f)(1), namely one year from "the date on which the judgment of conviction [became] final," ended on October 15, 2009. The Motion was not filed until May 7, 2010.

Jones contends that the period of limitation is extended because the Motion relies on this court's decision in a case involving another criminal defendant, Darwin Jones. <u>See</u> <u>United States v. Jones</u>, 609 F. Supp. 2d 113 (D. Mass. 2009) (the "Darwin Decision"). In that case, the court wrote that Cameron and Johnson had testified falsely at Jones's trial. <u>See</u> <u>id.</u> at

---

[2]     That period was amended to fourteen days in 2009. <u>See</u> Fed. R. App. P. 4(b)(1)(A).

123 n.6. Jones states that he was informed of the Darwin Decision on or about June 29, 2009, and that he was not able to review that decision in detail until November or December of 2009. See Extension Letter at 2. Jones argues that the period of limitation is, therefore, extended by §2255(f)(4), which permits a motion to be filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

The period of limitation applicable to the Motion is not extended by §2255(f)(4). First, the Darwin Decision does not belong to the universe of "facts" that, if discovered belatedly through the exercise of due diligence, postpone the commencement of the §2255 period of limitation. The First Circuit has interpreted the analogous provision concerning habeas petitions by state prisoners "to mean 'evidentiary facts or events[,] and not court rulings or legal consequences of the facts.'" Holmes v. Spencer, 685 F.3d 51, 59 (1st Cir. 2012) (alteration in original) (quoting Brackett v. United States, 270 F.3d 60, 69 (1st Cir. 2001), abrogated on other grounds by Johnson v. United States, 544 U.S. 295 (2005)); see also Lo v. Endicott, 506 F.3d 572, 575 (7th Cir. 2007) (the period of limitation is not extended by a court decision that is "not a fact within [the defendant's] own litigation history that changed his legal status"); Shannon v. Newland, 410 F.3d 1083, 1088-89 (9th Cir.

2005) (similar); <u>United States v. Duval</u>, Cr. No. 03-10292-PBS,
2013 WL 3786370, at *12 (D. Mass. July 17, 2013) (similar).

Moreover, the Darwin Decision does not truly "support[] the
claim or claims presented." §2255(f)(4). As indicated earlier,
in the pertinent part of the Darwin Decision, this court found
that Troopers Cameron and Johnson had testified untruthfully not
only in that case, but also in Jones's case. <u>See</u> 609 F. Supp. 2d
at 123 n.6. Jones argues that this finding supports Ground Three
of his Motion, which alleges that Jones's trial counsel
conducted an ineffective investigation of the arresting
officers' veracity. However, the Darwin Decision added little to
what the court had already stated in Jones's case. In denying
Jones's motion for a judgment of acquittal or for a new trial,
the court stated:

> I don't believe that the two Massachusetts state
> police officers, Cameron and Johnson -- well, I
> believe that at least one of them was not truthful
> when they each testified they didn't copy the other's
> report, and I may have questions about whether anybody
> punched or kicked Mr. Jones.
>
> * * * *
>
> I do believe at least one of the Massachusetts State
> Police Officers was not truthful. They both testified
> that neither copied the other's report. It's obvious
> they did. I think that was obvious to the jury too.

Sept. 16, 2008 Hr'g Tr. 4, 6. Therefore, even if the Motion is
supported to some degree by this court's finding that Cameron
and Johnson lied during Jones's trial, that finding was already

known to Jones by the time judgment was entered against him. The reiteration of that finding in the Darwin Decision is not material. In essence, even if Jones discovered the Darwin Decision only in late 2009, he had been aware of "the facts supporting the claim or claims presented," §2255(f)(4), since September 2008.[3]

The period of limitation is, therefore, not extended by §2255(f)(4), and the Motion was filed long after the period of limitation had expired.

2.    *Equitable Tolling*

Jones also argues that the one-year period of limitation should be equitably tolled. He asks that the court consider the period during which he "was effectively separated from all of [his] legal paperwork," meaning when he was "in transit from the Wyatt Detention Facility . . . throughout the several holdover facilities, until [he] finally arrived . . . at F.C.I. Schuylkill, PA." Extension Letter at 2.

The circumstances of this case do not justify equitable tolling. A habeas petitioner who seeks equitable tolling must

---

[3]    In addition, the decisive date for the purposes of §2255(f)(4) is not the date on which any facts were actually discovered, but "the date on which [they] could have been discovered through the exercise of due diligence." The Darwin Decision was issued on January 21, 2009. Even considering Jones's circumstances, the Darwin Decision was discoverable with due diligence more than a year before May 7, 2010, when the Motion was filed.

show "both 'extraordinary circumstances' and 'reasonable diligence.'" Ramos-Martinez, 638 F.3d at 323; Riva, 615 F.3d at 39; Delaney, 264 F.3d at 14. Jones has demonstrated neither of these factors.

Some transit among facilities is common. See Berroa Santana v. United States, 939 F. Supp. 2d 109, 115-16 (D.P.R. 2013) (a waiting period for personal papers, as well as language difficulties, are not extraordinary circumstances); Donovan v. Maine, No. 00-268P-H, 2000 WL 1827237, at *5 (D. Me. Dec. 12, 2000) (limited access to a prison library is not an extraordinary circumstance). Jones states that he "left the Wyatt Detention Facility on or about June 29, 2009," and that he "was in transit from [Wyatt] throughout the several holdover facilities, until [he] finally arrived here at F.C.I. Schuylkill, PA, on or about October 2, 2009." Extension Letter at 2. Preparation of a §2255 motion may indeed have been difficult for Jones during some of the time between the date on which judgment became final and the date on which the Motion was filed. However, Jones's account does not suggest that this was true for most or all of that period. See United States v. Cicero, 214 F.3d 199, 204 (D.C. Cir. 2000). In addition, it does not appear that preparation of the Motion would have required voluminous legal papers.

This case is not, therefore, one of those exceptional instances in which equitable tolling is appropriate.

IV.  THE MOTION IS NOT MERITORIOUS

Although the Motion is time-barred, the court has considered its merits as well. As explained below, the Motion would be subject to dismissal without a hearing even it had been filed in a timely manner.

A.   Legal Standard

Section 2255 "states four grounds upon which . . . relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" Hill v. United States, 368 U.S. 424, 426-27 (1962); see also Damon v. United States, 732 F.3d 1, 3 (1st Cir. 2013).

Motions under §2255 sometimes, but not always, require evidentiary hearings:

> [T]he petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether the petitioner has carried the devoir of persuasion in this respect, the court . . . need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.

United States v. McGill, 11 F.3d 223, 225-26 (1st Cir. 1993) (citations omitted). A hearing is unnecessary "when a §2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); see also Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007); Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984).

    B.  Analysis

    Jones alleges that the firearm he was convicted of possessing was planted on him; that the prosecution withheld exculpatory evidence; and that he was denied the effective assistance of trial counsel. As explained below, each of these allegations is either facially inadequate or refuted conclusively by the record.

        1.  *Planted Evidence (Ground One)*

    In Ground One of the Motion, Jones alleges that the arresting officers planted the gun and ammunition on him at the time of the arrest. See Motion at 5-6. This allegation does not present a ground for relief under §2255. See Hill, 368 U.S. at 426-27. In essence, it recapitulates the defense that Jones offered at trial. See, e.g., June 23, 2008 Trial Tr. 104-09. This defense was implicitly rejected by the jury. The court

found that the jury's verdict was supported by a sufficient evidentiary basis. In its decision to deny Jones's post-trial motion, the court explained that:

> those matters about which I have doubts or even convictions concerning the truth of the testimony do not cause me to think there's been a miscarriage of justice in the jury's verdict, that Mr. Jones had a gun, possessed a gun on the day in question.

Sept. 16, 2008 Hr'g Tr. 6-7. The Motion offers no credible evidence to undermine the jury's verdict or the court's past decisions. This ground for relief is, therefore, being denied.

### 2. *Non-Disclosure of Exculpatory Evidence (Ground Two)*

Ground Two of the Motion alleges that the government violated its obligation to disclose exculpatory evidence to Jones. The exculpatory evidence in question is the fact that in Commonwealth v. Garden, a case tried in the Boston Municipal Court, Officer Cooley provided testimony that was found not to be credible. See Motion at 7-9. The presiding Justice in that case, Raymond G. Dougan, stated that: "The court does not credit at all Cooley's testimony that he saw the muzzle of a gun through a partially open back seat rest when he was searching the passenger compartment of the Honda." Justice Dougan's decision was affirmed by the Massachusetts Supreme Judicial Court. See Commonwealth v. Garden, 883 N.E.2d 905 (Mass. 2008).

14

The government has a constitutional duty to disclose to the defendant all material exculpatory evidence that it possesses. See Brady v. Maryland, 373 U.S. 83 (1963). "To establish a Brady violation, a habeas petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment)." Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

The first and second of these elements are present in this case. Exculpatory evidence includes information that could serve to impeach government witnesses. See Giglio v. United States, 405 U.S. 150, 153-54 (1972); United States v. Misla-Aldarondo, 478 F.3d 52, 63 (1st Cir. 2007). The government's obligation under Brady "also encompasses evidence known only to law enforcement officers and not to prosecutors." Drumgold v. Callahan, 707 F.3d 28, 38 (1st Cir. 2013) (citing Kyles v. Whitley, 514 U.S. 419, 438 (1995)). In this case, the fact that Cooley was found to have testified falsely on another occasion could, perhaps, have been used to impeach his credibility.[4] This

---

[4]     Arguably, however, testimony describing Justice Dougan's findings might have been deemed "extrinsic evidence" of a specific instance of a witness's conduct, and therefore inadmissible under Federal Rule of Evidence 608(b). Compare

information was known, at least, to Cooley himself. Therefore, this information was exculpatory evidence in the government's possession under Giglio and Kyles and, for present purposes, the court assumes, without finding, that it was material. The government concedes that this information was not provided to Jones. See Gov't's Resp. to §2255 Mot. 18.

However, in order to show that he is entitled to relief, Jones must also establish the third element of a Brady violation: that the government's failure to disclose the relevant information resulted in prejudice. See Strickler, 527 U.S. at 282; Drumgold, 707 F.3d at 39. Prejudice occurs where "'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." Strickler, 527 U.S. at 289-90 (quoting Kyles, 514 U.S. at 434); United States v. Josleyn, 206 F.3d 144, 152 (1st Cir. 2000). The decisive question is whether in the absence of the undisclosed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434.

---

United States v. Davis, 183 F.3d 231, 257 n.12 (3d Cir. 1999) (testimony about an investigative finding concerning a witness's behavior would violate the ban on extrinsic evidence), with United States v. Dawson, 434 F.3d 956, 958 (7th Cir. 2006) (permissible questioning could "extend[] to asking the witness whether a judge, say, had ever found him not to be a credible witness").

16

Jones cannot demonstrate that he was prejudiced as a result of the government's failure to disclose Justice Dougan's findings concerning Cooley. The heart of the testimony about the events of Jones's arrest was provided by the four arresting officers -- Tarantino, Cooley, Cameron, and Johnson. These officers' testimony was consistent. It was corroborated, in part, by the testimony of Officers Earley and Worrell. Cooley was the only one of the four arresting officers who did not enter the building to pursue and ultimately arrest Jones. Cooley's testimony was, therefore, the least significant piece of evidence concerning whether Jones had, in fact, possessed the gun as charged. The jury found Jones guilty even though the credibility of more crucial witnesses, Cameron and Johnson, had been damaged by their actions and testimony concerning Jones's own case. Under these circumstances, there is no "reasonable probability" that the result of Jones's trial would have been different if the information concerning Cooley's testimony in an unrelated case had been disclosed. See Strickler, 527 U.S. at 289-90; Kyles, 514 U.S. at 434. The jury's guilty verdict remains "worthy of confidence." Id. Ground Two of the Motion is, therefore, being denied.

       3.   *Ineffective Assistance of Counsel (Ground Three)*

In the third and final Ground of the Motion, Jones asserts that he was denied the effective assistance of counsel at trial.

Jones alleges that his trial counsel, Mr. Ullmann, "neglected to investigate enough of the numerous potential witnesses, who were obviously in a cognizable enough position to have been able to perceive any viable enough relevant details, which would have aided and assisted in the impeachment of the government's only witnesses." Motion at 11.

A person claiming ineffective assistance of counsel must show, first, that counsel's performance fell below an objective standard of reasonable effectiveness. See Strickland v. Washington, 466 U.S. 668, 697-99 (1984); Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010). In addition, a person claiming ineffective assistance of counsel must show that his counsel's defective performance was prejudicial. See Argencourt, 78 F.3d at 16. To establish prejudice, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, too, a "reasonable probability" is one "sufficient to undermine confidence in the outcome." Id.; Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001).

The Motion establishes neither that Jones's counsel failed to provide reasonably professional assistance nor that any misstep by counsel was prejudicial. Jones's assertion that his counsel "neglected to investigate enough of the numerous potential witnesses," Motion at 11, is the kind of "conclusory allegation" or "self-interested characterization" that "need not [be given] weight." McGill, 11 F.3d at 225-26. The Motion does not identify any other potential witness, or present a basis to believe that any witness other than Cooper and Santos-Silva, who testified on Jones's behalf, could have provided testimony beneficial to the defense. With regard to matters occurring before it, the court stated on the record that Jones's counsel "[did] a brilliant job," that Jones's case was "extremely well presented," and that "the quality of the representation . . . has been just what we hope for in the federal courthouse." June 24, 2008 Tr. 10, 24. Jones has not now shown, or even plausibly contended, that his counsel was ineffective. Therefore, he has not demonstrated prejudice. This final Ground for relief is, therefore, without merit.

V.  CERTIFICATE OF APPEALABILITY

The court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing §2255 Proceedings, Rule 11(a). A

certificate of appealability ("COA") is warranted if "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)). A claim can be debatable "even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." <u>Id.</u> However, the "issuance of a COA must not be <u>pro</u> <u>forma</u> or a matter of course," because "Congress [has] confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not." <u>Id.</u> at 337. Where the court finds that a motion is subject to dismissal on procedural grounds, a COA should be issued only if both: (1) the soundness of the court's procedural ruling is debatable, and (2) the substantive claim is colorable. <u>See</u> <u>Slack</u>, 529 U.S. at 484-85; <u>Mateo v. United States</u>, 310 F.3d 39, 40 (1st Cir. 2002).

The court does not find that reasonable jurists could view its conclusion that the Motion is barred by the period of limitation as debatable or wrong. The court also does not find that reasonable jurists could view its assessment of the merits of Jones's claims as debatable or wrong. Accordingly, a COA is being denied as to all claims. Jones may seek a COA from the

court of appeals. <u>See</u> Rules Governing §2255 Proceedings, Rule 11(a).

VI.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Jones's Motion to Vacate, Set Aside, or Correct His Sentence (Docket No. 104) is DENIED.

2.   A certificate of appealability is DENIED as to all claims.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE